[No. B023780. Second Dist., Div. Seven. June 16, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT JOHN FERRARA, Defendant and Appellant.

202

COUNSEL

Ball, Hunt, Hart, Brown & Baerwitz, Anthony Murray and Joseph D. Mullender, Jr., for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Mark Alan Hart and Ellen Birnbaum Kehr, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

JOHNSON, J.—This is an appeal from a judgment of conviction on two counts of felony drunk driving. Appellant was driving under the influence of alcohol when he became involved in a two-car collision at an intersection which resulted in the death of the other driver. The primary issue is whether the trial court's finding the People failed to prove appellant ran the red light when he entered the intersection eliminated one of the essential elements required for a felony drunk driving conviction. We rule it did and, accordingly, reverse.

### FACTS AND PROCEEDINGS BELOW

In the early evening of October 15, 1984, appellant Robert Ferrara had gone to a local Los Angeles bar for a couple of drinks. Just before 2 a.m. on the following morning, October 16, 1984, he left the bar and headed home by driving eastbound on Santa Monica Blvd.

At about 2 a.m., the victim, Vincent Ashton, and his passenger, Mary Richter, were proceeding northbound on La Brea in Ashton's vehicle when

they collided with appellant's vehicle. Richter did not see the accident happen because she was searching for something in her purse at the time. She only recalls the force of the impact and then being helped from Ashton's vehicle. As a result of injuries caused by the accident, Ashton died soon after the collision and Richter had to be hospitalized for two weeks and undergo several follow-up surgeries.[1]

Appellant was charged in an information filed by the District Attorney of Los Angeles County. In Count I of the information appellant was charged with vehicular manslaughter with gross negligence as a result of an unlawful act, that is, running a red light prohibited by Vehicle Code section 21453, subdivision (a) in violation of Penal Code section 192, subdivision (c) (3), and in counts II and III of the information appellant was charged with felony drunk driving in violation of Vehicle Code section 23153, subdivisions (a) and (b).

At trial Donald Estrada testified he was driving westbound on Santa Monica Boulevard when he saw a yellow light at the La Brea intersection and stopped his vehicle. Estrada did not witness the impact between the two vehicles because he had turned to talk to his passenger Ralph Dardi. However, he did hear the noise of brakes screeching and then the sound of the impact. As Estrada looked up he saw two cars spinning around each other in the direction of his vehicle, until appellant's vehicle came to rest and the victim's vehicle struck Estrada's vehicle. Dardi's testimony was essentially the same except he recalled the crash occurred seconds after the light had turned red. Both Estrada and Dardi rendered assistance to the parties after the collision.

Hector Orelluna was working at the Carl's Jr. at the intersection when he witnessed the appellant's vehicle skidding eastbound on Santa Monica Blvd. He testified the light was green for north/south traffic on La Brea—the street on which the victim was driving.

Armand Jimenez is the only witness who supports appellant's contention the light was green for east/west traffic on Santa Monica Boulevard when appellant entered the intersection. At the time of the accident, Jimenez was driving eastbound on Santa Monica Boulevard. He was approximately 100 feet east of La Brea and testified the light was still green for eastbound traffic. When the collision occurred, Jimenez looked in his rear view mirror and saw the victim's vehicle spinning across the intersection.

Shortly after the incident, Deputy Doyle of the Los Angeles County Sheriff's Department arrived at the scene and observed the victim was still

---

[1] Related civil proceedings have been settled by payments to Mary Richter and the heirs of Vincent Ashton.

trapped in his vehicle as paramedics rendered assistance. Appellant was observed standing on the street corner and Doyle proceeded to question him. Appellant informed Doyle he had been driving eastbound on Santa Monica Boulevard when the collision occurred and the light was green for him as he entered the intersection. Doyle observed appellant may have been intoxicated. Appellant confirmed this by admitting he had between 3-4 drinks at a local bar. After appellant failed to properly perform four field sobriety tests (administered by Doyle) he was placed under arrest and taken to a local hospital where a blood sample revealed that appellant had a blood-alcohol level of 0.16 percent.[2]

After a court trial, the trial judge acquitted appellant as to count I on grounds the People failed to prove beyond a reasonable doubt he had run a red light. However, the judge did find him guilty on counts II and III. Appellant was sentenced to 16 months in the state prison as to count II with the midterm of 2 years in count III to run concurrently with that in count II. Motions for a new trial and probation were denied. Appellant was also ordered to pay restitution of $100 and his driver's license was revoked. At the time of this appeal, appellant is at liberty on $10,000 bail.

DISCUSSION

The instant case turns primarily on the trial court's faulty recollection of what he decided on count I when he was ruling on counts II and III, and the implications of the finding appellant had not run the red light on his guilt of felony drunk driving. Appellant rightly contends the trial court lacked jurisdiction to alter its factual findings in order to reflect appellant did run the red light for purposes of counts II and III after finding he did not run the red light for purposes of count I. Accordingly, the conviction of felony drunk driving must be reversed because proximate causation was not properly established.

I. *Appellant's Conviction of Felony Drunk Driving Is Not Supported by a Factual Finding of the Trial Court.*

Vehicle Code section 23153, subdivision (a) is clear on its face that "[i]t is unlawful for any person, while under the influence of an alcoholic beverage . . . to drive a vehicle *and,* when so driving, *do any act forbidden by law or neglect any duty imposed by law* in the driving of the vehicle, *which* act or neglect *proximately causes bodily injury* to any person other than the driver." (Italics added.) ■ In *People* v. *Oyaas* (1985) 173 Cal.App.3d 663,

---

[2]This blood-alcohol level is sufficient to show that appellant was under the influence of alcohol for purposes of driving under the influence of alcohol.

667 [219 Cal.Rptr. 243] the appellate court identified three distinct elements which must be proved to establish a violation of section 23153.

"1. That the defendant drove a vehicle while under the influence of an alcoholic beverage (subd. (a)) *or* while having 0.10 percent or more, by weight, of alcohol in his or her blood (subd. (b)); [¶] 2. That when so driving, the defendant did some act which violated the law or failed to perform some duty required by law; and [¶] 3. That as a proximate result of such violation of law or failure to perform such duty, another person was injured. (CALJIC No. 12.60 (1984 rev.).)" (Italics in original.)

The defendant in *Oyaas* claimed, as does the appellant in the case at bar, that the evidence fell short of establishing the second element which requires the accused "do any act forbidden by law or neglect any duty imposed by law in the driving of the vehicle, . . . ." (Veh. Code, § 23153, subd. (a).) In *Oyaas,* the court cited *People* v. *Thurston* (1963) 212 Cal.App.2d 713, 714-715 [28 Cal.Rptr. 254] to point out the second element "is separate from and is not satisfied by evidence that the defendant was under the influence of alcohol while operating the vehicle. . . . The evidence must establish an unlawful act or omission *in addition* to driving under the influence of alcohol." (*Id.,* at pp. 667-668, citations omitted, italics added.)

The trial court in *Oyaas* made an express finding the defendant in that case had driven erratically and this finding was sufficient to satisfy the second element of the test. (*Ibid.*) ■ In the case at bar, appellant points to the *Oyaas* interpretation of section 23153, but argues that in his case the trial court expressly found the People had failed to prove appellant ran the red light. Thus, in the instant case the second element of the *Oyaas* test was not satisfied.[3]

Appellant's argument is supported by the record. True, there was ample testimony which *could* have supported a factual finding appellant did run the red light and thus the second element of section 23153 was satisfied. Nevertheless, the trial court expressly found at the conclusion of trial that

---

[3] If there were facts in the record to support it, the trial court could have found appellant had committed some "act or omission" other than run the red light which would have satisfied the second element of the *Oyaas* test. The trial court could have identified such an "act or omission" similar to those found in *People* v. *Lobaugh* (1971) 18 Cal.App.3d 75 [95 Cal.Rptr. 547] (speeding and reckless driving in addition to driving under the influence of alcohol), or *People* v. *Graybehl* (1944) 67 Cal.App.2d 210 [153 P.2d 771] (driving with a dirty windshield was found to be a sufficient unlawful act in addition to driving under the influence of alcohol). However, the trial court made no such finding and this court has been unable to find evidence of this sort of alternative "act or omission" in the record before the trial judge in this case.

appellant had not run the red light and therefore was not guilty as to count I of the information. Inexplicably, the trial court proceeded to hold appellant guilty as to counts II and III. There is language in the record from which one could infer the judge did not recognize felony drunk driving requires an additional "unlawful act or omission" as stated in *Oyaas,* but only that a defendant be driving while drunk and someone be injured.

■ Respondent correctly emphasizes an appellate court must review the record of the trial court in a light most favorable to the judgment below in deciding whether there was substantial evidence to demonstrate the defendant was guilty beyond a reasonable doubt. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255], construing *Jackson* v. *Virginia* (1979) 443 U.S. 307 [61 L.Ed.2d 560, 99 S.Ct. 2781].) ■ Respondent fails, however, to recognize the crucial importance of the second element of section 23153 and the failure of proof of that element once the trial court found appellant did not run the red light. Respondent contends the second element discussed in *Oyaas* is satisfied here because the mere act or omission of driving drunk is a violation of the Vehicle Code and a neglect of a duty owed to other drivers. This contention is inconsistent with the plain language of section 23153, *as well as Oyaas, supra,* and like cases. In order to rule this way, we would have to take it upon ourselves to rewrite legislation by holding that a cause of action for felony drunk driving could be established where the defendant is only found to have been: (1) driving under the influence of alcohol, and (2) injury results to a second person. We decline to accept this invitation to engage in a blatant act of judicial activism. We further observe that but for this second element a drunk driver could be found guilty of felony drunk driving even if he were driving perfectly but suffered the misfortune of being broadsided by a careening car whose driver was speeding, running a red light, and disobeying a host of other safety laws.

Since the trial court found appellant did not run the red light with regard to count I there can be no finding—express or implied—that appellant ran the red light as to counts II and III. We requested and received supplemental briefing from the parties on the question whether the record could support an implied finding appellant engaged in some other unlawful act—including ordinary negligence—which caused the accident and the victim's death. Given this second chance, the People still could not identify any other unlawful act which was a proximate cause of the collision. Accordingly, the convictions under counts II and III must be reversed because the People failed to prove appellant's conduct satisfied the second element of Vehicle Code section 23153, that is, that while driving under the influence of alcohol he drove in an unlawful manner which caused injury or death of the victim.

## II. *It Was Impermissible for the Trial Court to Later Change Its Finding Under a Claim It Did Not Intend to Find the People Had Failed to Prove Appellant Ran the Red Light.*

 On September 19, 1986 (one month after the trial date), at appellant's hearing for a motion for new trial, the trial judge stated he had found, as a matter of fact, that the appellant had indeed run the red light.[4] Appellant argues this was neither the expressed nor implied finding of the trial court with regard to counts II and III of the information. Appellant points to the record of the earlier trial where the judge clearly stated he didn't, ". . . feel that the People (had) been able to show beyond a reasonable doubt that in fact the defendant ran a red light at (the) intersection." Thus a review of the reporter's transcript leaves no doubt the trial judge specifically found a failure of proof that appellant ran the red light.

Respondent claims matters of clerical error "or judicial inadvertence[5] may be corrected at any time" citing *In re Candelario* (1970) 3 Cal.3d 702, 705 [91 Cal.Rptr. 497, 477 P.2d 729]. In *Candelario,* our State Supreme Court held the ". . . power to correct clerical errors . . . exists independently of statute. . . . [¶] Clerical error, however, is to be distinguished from judicial error *which cannot be corrected by amendment.* The distinction between clerical error and judicial error is 'whether the error was made in rendering the judgment, or in recording the judgment rendered.' " (Citing 46 Am.Jur.2d, Judgments, § 202.) (Citations omitted, italics added.) In the case at bar it is clear the mistake, if any, was made "in rendering the judgment" which cannot be corrected as a mere clerical error.

At appellant's motion for a new trial, the trial judge stated the confusion over his finding on the red light was caused because he was referring to the requirements of conduct for gross negligence (manslaughter) and not felony drunk driving. But nowhere in the transcript of the trial is there any mention of "gross negligence." Moreover, the transcript reveals the trial court specifically found the evidence insufficient to prove appellant ran the red light. That factual determination would hold true whether the running of the red light were being used to establish the element of "gross negligence" for count I or the element of an "unlawful act or omission" for counts II and III. All three counts require proof beyond a reasonable doubt. As a matter of logic it is impossible for appellant not to have run the red light

---

[4] The court stated: "I have looked in my notes. And clearly my notes indicate I remember the testimony that I felt he did run the red light as given by the testimony of the People's witnesses, both the one in the other vehicle and the gentleman in the restaurant."

[5] Respondents do not offer a definition for their use of the term "judicial inadvertence."

and thus not have been grossly negligent yet simultaneously to have run the red light and thus to have committed an unlawful act.

Appellant either did or he did not run the red light. The trial court here held the People failed to prove he did. No matter what the trial judge's notes may reveal about what he thought or what he meant to say, the fact is the trial judge specifically said in open court there was insufficient evidence appellant ran the red light and indeed this was the primary reason he gave for acquitting on count I. A revision of this express finding cannot be justified under the guise of "clerical error." Accordingly, appellant's conviction of counts II and III must be reversed.

## DISPOSITION

The judgment is reversed.

Lillie, P. J., and Reese, J.,* concurred.

---

* Assigned by the Chairperson of the Judicial Council.